**FILED**

**August 10, 2016**

**TN COURT OF
WORKERS' COMPENSATION
CLAIMS**

**Time 9:50 AM**



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
# AT CHATTANOOGA

| | | |
|---|---|---|
| Robert Dennis, Jr. | ) | Docket No.: 2015-01-0184 |
|     Employee, | ) | |
| v. | ) | State File Number: 43330-2015 |
| Polymer Components | ) | |
|     Employer, | ) | Judge Audrey A. Headrick |
| And | ) | |
| Accident Fund | ) | |
|     Insurance Carrier. | ) | |
| | ) | |

## EXPEDITED HEARING ORDER
## GRANTING TEMPORARY DISABILITY BENEFITS

This matter came before the Court on July 13, 2016, on a Request for Expedited Hearing filed by the employee, Robert Dennis, Jr., pursuant to Tennessee Code Annotated section 50-6-239 (2015). The present focus of this case is whether Mr. Dennis is entitled to past and ongoing temporary disability benefits. The central legal issue is whether Mr. Dennis is likely to prevail at a hearing on the merits of this issue. For the reasons set forth below, the Court finds Mr. Dennis is likely to prevail at a hearing on the merits in proving entitlement to past and ongoing temporary disability benefits based on the evidence presented at this time.[1]

### History of Claim

Based upon the evidence introduced during the November 20, 2015, and July 13, 2016 evidentiary hearings, the Court finds as follows:[2]

---

[1] A complete listing of the technical record and exhibits is attached to this Order as an appendix.

[2] The Court previously held an expedited hearing in this matter on November 20, 2015. The hearing resulted in the Court ordering Polymer Components (Polymer), at Mr. Dennis' discretion, to authorize him either to see Dr. Chad Smalley or to provide him with a panel of orthopedic surgeons. Polymer was also ordered to pay for the medical treatment Mr. Dennis received from Starr Regional and Doctors Express. At the July 13, 2016 hearing, the Court took judicial notice of the testimony heard and exhibits admitted into evidence at the prior expedited hearing. *See Hughes v. New Life Dev. Corp.*, 387 S.W.3d 453, 457 n.1 (Tenn. 2012), holding, "we are permitted to take judicial notice of the facts from earlier proceedings in the same action."

1

Mr. Dennis sustained a right-knee injury on June 3, 2015, while on the premises of Polymer during a break. Immediately following the accident, Mr. Dennis received emergency treatment at Starr Regional where Dr. David Childress diagnosed a right-knee sprain, right shoulder sprain, and a chest wall contusion. (Ex. 2. Nov. 20, 2015 hearing.)[3] Dr. Childress instructed Mr. Dennis to use crutches as needed and restricted him to no prolonged standing or walking. *Id.*

Polymer authorized Mr. Dennis to go to Doctors Express, where he saw Dr. Victoria Folsom on June 4, 2015. (Ex. 3. Nov. 20, 2015 hearing.) She ordered a right-knee MRI and took Mr. Dennis completely off work. *Id.* Upon receipt of the MRI report on June 5, 2015, Dr. Folsom initialed the following handwritten note: "Torn lateral meniscus, possible medial too. Diagnostic changes of the right knee large amount of fluid. Refer to ortho." *Id.* On the same day, Dr. Folsom saw Mr. Dennis and advised him of her diagnosis of a meniscal tear and orthopedic referral. *Id.* Mr. Dennis testified his understanding was that Dr. Folsom continued to keep him off work. Although Mr. Dennis subsequently selected Dr. Chad Smalley from a panel, Polymer denied his claim before his scheduled appointment. (Ex. 3.)

Mr. Dennis received no additional medical treatment for his right-knee injury until approximately ten months after his June 5, 2015 appointment with Dr. Folsom. After the Court issued its Order on December 18, 2015, the parties advised the Court at a February 24, 2016 status hearing that Polymer offered Mr. Dennis a panel of orthopedic surgeons prior to receiving communication from him as to whether he wanted to see Dr. Smalley or to receive a panel in order to achieve compliance with the Order. Mr. Dennis initially selected Dr. Reddish from the panel offered. (Ex. 3.) However, he subsequently decided the panel was invalid after Dr. Reddish's office informed Mr. Dennis that Dr. Reddish did not accept workers' compensation patients. (Ex. 3.) At the February 24, 2016 status hearing, Polymer agreed to authorize and schedule an appointment with Dr. Smalley at Mr. Dennis' request. However, due to an apparent scheduling mishap within Dr. Smalley's office, Mr. Dennis saw Dr. Matthew Bernard instead of Dr. Smalley. Polymer introduced into evidence Dr. Bernard's March 16, 2016 office note for the limited purpose of impeachment.

By agreement of the parties, Mr. Dennis saw Dr. John Gracy, an orthopedic surgeon, on April 21, 2016. Regarding Mr. Dennis' right-knee medial meniscus tear and complex lateral meniscus tear, Dr. Gracy opined that those diagnoses were "the result of accident that arose primarily out of and in the course of employment." (Ex. 2.) He opined the right-knee osteoarthritis was not work-related. *Id.* At that time, Dr. Gracy recommended an arthroscopy with meniscectomy, ordered physical therapy, and assigned

---

[3] Unless otherwise specified, the exhibits cited came into evidence at the July 13, 2016 expedited hearing.

work restrictions. *Id.* Dr. Gracy restricted Mr. Dennis to a sitting job with his foot/leg elevated; alternating sitting/standing; and, walking short distances with his crutches. *Id.*

After Polymer authorized the recommended surgery on May 2, 2016, Dr. Gracy changed Mr. Dennis' restrictions the following day. On May 3, 2016, Dr. Gracy restricted Mr. Dennis to sedentary work; no climbing stairs, ladders or poles; must use crutches; and "no driving after surgery (5/23/16) until post-op visit (6/2/16)." *Id.* Dr. Gracy performed the arthroscopy with meniscectomy on May 23, 2016. *Id.* At Mr. Dennis' post-op visit on June 2, 2016, Dr. Gracy advised Mr. Dennis "that normal post op recovery from a knee scope is 6-8 weeks and after that most of his pain would probably be related to his underlying arthritis (not work related)." *Id.* At that point, Dr. Gracy released Mr. Dennis to return to work to a sitting job with his foot/leg elevated. *Id.* Dr. Gracy also advised Mr. Dennis to wean from his crutches to become full weight bearing. *Id.* At Mr. Dennis' last visit with Dr. Gracy on June 30, 2016, he again advised Mr. Dennis to wean from his crutches and kept his restrictions the same.

At the expedited hearing, the testimony of Mr. Dennis and Ralph Brett, the owner of Polymer, was somewhat consistent regarding discussions about Mr. Dennis' return to work. Both were uncertain about the timeframes regarding discussions between Mr. Dennis and Mr. Brett and/or his human resource person. Mr. Dennis testified Mr. Brett told him, "We will accommodate you," but gave him no specifics. Mr. Dennis also stated there was another offer for him to return to work in January 2016 or after. He was told, "We have jobs for you," but nothing specific was discussed.

Likewise, Mr. Brett testified Polymer made offers of work to Mr. Dennis. He stated he believes Polymer can accommodate Mr. Dennis with several jobs because it has "numerous people on crutches." However, Mr. Brett acknowledged he has not reviewed Mr. Dennis' medical records. Mr. Brett also recalled asking Mr. Dennis approximately three to four months ago "when [Mr. Dennis] was coming back to work."

Mr. Dennis discussed the reasons why he has not yet attempted to return to work at Polymer. First, there was a great deal of testimony regarding the fact that he would have difficulty going up and down multiple stairs with crutches, and there are steps leading into most of the building entrances. (Ex. 4.) For the maintenance entrance that does not have steps, he stated it is one-and-a-half to two football fields away from that entrance to his workstation. *Id.* Another entrance into the building becomes slippery when it gets wet due to silicone on the floor. Mr. Brett testified he was unaware of that issue and stated his safety committee had not advised him of it.

Next, Mr. Dennis testified he would not be able to use the restrooms at Polymer. He stated the restroom stalls at Polymer are not large enough to accommodate his

crutches, and he would not be able to use the commodes because they are too low.[4] *Id.* The wider stall that would more easily accommodate him does not contain a handrail. *Id.* One of the photographs admitted shows a narrow stall with a handrail, which Mr. Dennis stated was not there when he last worked in June 2015. *Id.* Mr. Brett testified he could accommodate Mr. Dennis by letting him use the office restroom.

Another reason given by Mr. Dennis regarding why he could not return to work at Polymer was his inability to drive. In addition to the time that Dr. Gracy restricted him from driving from May 23, 2016, through June 2, 2016, he stated he was unable to drive because he cannot brake hard enough with his right leg. Mr. Dennis further stated he does not have access to people who can transport him to and from work.

Regarding a "trimmer" position that Polymer put forth at the hearing as a possible light duty job position, Mr. Dennis stated it would be difficult to find a place at the workstation to elevate his foot. (Ex. 4—Photos with Mr. Dennis standing with his crutches and sitting in chair.) He indicated it was difficult to sit down in the chair. Mr. Dennis also stated the employees who work as trimmers lean forward as they do their work and hold the work steady in front of them. (Ex. 4—Photos showing female workers seated.) He indicated he could not perform those tasks because his "belly is too big." Further, Mr. Dennis also stated he does not know if he could currently perform his prior job as a "lixie cutter" because he has to be able to get up from his stool and move raw/finished product with both hands. Although Mr. Dennis remains employed at Polymer, he acknowledged during cross-examination that he has not yet attempted to return to work since his injury on June 3, 2015.

Mr. Dennis requested temporary disability benefits from June 3, 2015, forward. He cited *Tryon v. Saturn Corp.*, 254 S.W.3d 321, 328-330 (Tenn. 2008); *Williams v. Saturn Corp.*, No. M2004-01215-WC-R3-CV, 2005 Tenn. LEXIS 1032, at *6-9 (Tenn. Workers' Comp. Panel Nov. 15, 2005); and *Hackney v. Integrity Staffing Solutions, Inc., et al.*, No. 2016-01-0091, 2016 TN Wrk. Comp. App. Bd. LEXIS 29, at *10-14 (Tenn. Workers' Comp. App. Bd. July 22, 2016), to support his contention that Polymer did not provide any reasonable offers for him to return to work.[5] He stated the Court must look at the circumstances under which both sides acted and whether they acted in good faith. Mr. Dennis pointed to the delay in his medical treatment and to Polymer's denial of his claim. He argued Dr. Folsom took him off work from June 4, 2015, until he saw Dr. Gracy on April 21, 2016. From April 21, 2016, forward, Dr. Gracy has kept him on restricted duty. Mr. Dennis argued the evidence shows that Polymer could not reasonably accommodate his restrictions. Specifically, Mr. Dennis contended that "creature comforts" are not available to him at Polymer in his restricted condition.

---

[4] Mr. Dennis, who testified he weighs 360 pounds, estimated the stall widths to be approximately two-and-one-half to three-feet wide.

[5] Mr. Dennis cited this Court's decision in *Hackney* at the expedited hearing, which was subsequently affirmed by the Tennessee Workers' Compensation Appeals Board.

4

Polymer asked the Court to deny Mr. Dennis' request for temporary disability benefits. It argued it made reasonable offers for Mr. Dennis to return to work, but Mr. Dennis made no attempt to return to work. Polymer pointed out that the only time Mr. Dennis was restricted from driving was from May 23, 2016, through June 2, 2016. It further argued that Dr. Folsom's June 4, 2015 office note does not take Mr. Dennis off work. Polymer noted that the return to work recommendation form is not marked to indicate that Dr. Folsom took him off work. Instead, since Dr. Folsom only referred Mr. Dennis to see an orthopedic surgeon, it argued that the June 4, 2015 office note is insufficient to make a determination that he intended Mr. Dennis to remain off work. Regarding Mr. Dennis' assertion that Polymer delayed his medical treatment, it noted that Mr. Dennis argued for weeks that the panel it offered to him in early 2016 was invalid. Further, Polymer argued Mr. Dennis is not a credible witness.

## Findings of Fact and Conclusions of Law

Mr. Dennis has the burden of proof on all essential elements of a workers' compensation claim. *Scott v. Integrity Staffing Solutions*, No. 2015-01-0055, 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *6 (Tenn. Workers' Comp. App. Bd. Aug. 18, 2015). He is not required to prove every element of his claim by a preponderance of the evidence in order to obtain relief at an expedited hearing. *McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). At an expedited hearing, Mr. Dennis has the burden to come forward with sufficient evidence from which the trial court can determine that he is likely to prevail at a hearing on the merits. *Id.*

Before applying these principles, the Court notes it observed Mr. Dennis during two in-person, evidentiary hearings and finds him to be a credible witness. Thus, the Court holds that Polymer did not impeach Mr. Dennis' testimony.

Turning now to the merits of his claims, the Court will first address whether Mr. Dennis is entitled to temporary *total* disability benefits. In order to be entitled to temporary total disability benefits, Mr. Dennis "must prove that he was (1) totally disabled to work by a compensable injury; (2) that there is a causal connection between the injury and his inability to work; and (3) the duration of that period of disability." *James v. Landair Transport, Inc.*, No. 2015-02-0024, 2015 TN Wrk. Comp. App. Bd. LEXIS 28, at *16 (Tenn. Workers' Comp. App. Bd. Aug. 26, 2015) (quoting *Simpson v. Satterfield*, 564 S.W.2d 953, 955 (Tenn. 1978)). Mr. Dennis was initially taken completely off work by Dr. Folsom on June 4, 2015. In the interim between Mr. Dennis' June 4, 2015 visit and his follow-up visit the next day, Dr. Folsom obtained his right-knee MRI results showing a lateral meniscus tear, possible medial tear, and a large amount of fluid. (Ex. 2 Nov. 20, 2015 hearing.) The Court recognizes that Dr. Folsom did not specify on the return to work recommendation form that Mr. Dennis remained off work.

5

However, she referred Mr. Dennis to an orthopedic surgeon and, importantly, did not indicate on the form that he could return to work in any capacity the very day after she took him off work. Therefore, the Court finds Mr. Dennis is likely to establish at a hearing on the merits that he is entitled to temporary total disability benefits from June 4, 2015, through April 21, 2016.

The Court will next address whether Mr. Dennis is entitled to temporary *partial* disability benefits. Mr. Dennis may be entitled to temporary partial disability benefits, a category of vocational disability distinct from temporary total disability, when the temporary disability is not total. *See* Tenn. Code Ann. § 50-6-207(1)-(2) (2015). Although temporary total disability refers to the employee's condition while completely unable to work because of the injury until the worker recovers as far as the nature of the injury permits, "[t]emporary partial disability refers to the time, if any, during which the injured employee is able to resume some gainful employment but has not reached maximum recovery." *Williams*, 2005 Tenn. LEXIS 1032, at *6.

The Workers' Compensation Appeals Board recently provided clarity regarding the legal analysis to undertake when deciding whether an employee is entitled to temporary partial disability benefits at an interlocutory hearing. In *Hackney, supra*, the Workers' Compensation Appeals Board noted that "[w]hile the concept of a meaningful return to work is more fully developed in cases involving awards of permanent disability benefits, courts use a similar analytical framework to determine whether an employee is entitled to temporary partial disability benefits in the face of an offer of light duty work." *Id.* at *11-12; *and see Frye v. Vincent Printing Co., et al.*, No. 2016-06-0327, 2016 TN Wrk. Comp. App. Bd. LEXIS ___, at slip op. 7-8 (Tenn. Workers' Comp. App. Bd. Aug. 2, 2016); *see, e.g., Newton v. Scott Health Care Ctr.*, 914 S.W.2d 884, 886 (Tenn. Workers' Comp. Panel Dec. 15, 1995) (interpretation of a meaningful return to work is determined by "an assessment of the reasonableness of the employer in attempting to return the employee to work and the reasonableness of the employee in failing to return to work").

Applying those general legal principles to Mr. Dennis' case, the Court must consider the reasonableness of Polymer in attempting to return him to work and the reasonableness of Mr. Dennis in failing to return to work. Mr. Dennis' unrebutted testimony was that any conversations between himself and Polymer regarding a return to work consisted of vague assurances that it could accommodate him. Neither Mr. Dennis nor Mr. Brett could pinpoint the exact timeframes that these conversations occurred. It is unclear whether any or all of the conversations occurred during the time that Mr. Dennis was taken off work by Dr. Folsom. While Mr. Brett testified that Polymer has "numerous people on crutches," it is unknown as to whether any such individuals have the same restrictions placed upon them as Mr. Dennis.

Mr. Dennis' right-knee injury has required him to use crutches since June 3,

6

2015, when he was treated at Starr Regional. He testified as to his knowledge of the facility regarding its entranceways and stairs, the distance from an entrance to his work station, and an entranceway that becomes slick when it gets wet due to silicone on the floor. Based upon his familiarity with the restrooms at Polymer, Mr. Dennis testified he would not be able to utilize the restroom stalls with crutches due to the stall widths and lack of handicap accessibility. Although Mr. Brett testified Mr. Dennis could use the office restroom, no evidence was submitted to establish whether it was handicap accessible or the walking distance between the office restroom and any proposed work station. Further, based on the photographic evidence and Mr. Dennis' testimony regarding the "trimmer" position raised at the expedited hearing, it would not be possible for Mr. Dennis to perform the required tasks with his right leg elevated.

When considering these facts and the reasonableness of the actions of both parties, the Court finds that Mr. Dennis is entitled to temporary partial disability benefits. The evidence indicates Polymer made no reasonable offers to return Mr. Dennis to work. From April 22, 2016, forward, there is no indication regarding what type of job(s) it had available within Mr. Dennis' restrictions. There is no indication whether it made offers to return to work after April 22, 2016, or before Dr. Gracy imposed work restrictions. No evidence was submitted to establish how Polymer could accommodate Mr. Dennis' restrictions, including how he could get from outside of the facility to a workstation while on crutches. Finally, and perhaps most importantly, the Court agrees that it was reasonable for Mr. Dennis to decline Polymer's offers to return to work since its restrooms are not accessibly designed, which would deprive him of a necessary "creature comfort" that all employees require while at work. In light of the foregoing, the Court finds Mr. Dennis is likely to prove at a hearing on the merits that he is entitled to temporary partial disability benefits from April 22, 2016, forward.

**IT IS, THEREFORE, ORDERED** as follows:

1. The parties stipulated that the amount of temporary disability benefit is $281.00 per week based on Mr. Dennis' average weekly wage of $421.48.

2. Payment of past due temporary total disability benefits in the amount of $12,966.14 shall be made for the period from June 4, 2015, to April 21, 2016.

3. Payment of past due temporary partial disability benefits in the amount of $4,415.71 shall be made for the period from April 22, 2016, to August 9, 2016.

4. Polymer or its workers' compensation carrier shall continue to pay to Mr. Dennis temporary disability benefits in regular intervals until he is no longer eligible for those benefits by reaching maximum medical improvement, by returning to work at a wage equal to or greater than the pre-injury wage, or by release without

restrictions by the authorized treating physician. Polymer's representative shall immediately notify the Bureau, Mr. Dennis, and Mr. Dennis' counsel, if any, of the intent to terminate temporary disability benefits by filing Form C-26, citing the basis for the termination.

5. The Court grants the Motion to Award Attorney Fees and Expenses filed by Mr. Dennis' attorney on July 14, 2016. The Court approves attorney fees for William J. Brown, Mr. Dennis' attorney, in the amount of $3,476.37, which is twenty percent of the total amount of temporary disability benefits ($17,381.85) awarded to Mr. Dennis. The Court also approves reasonable expenses incurred by Mr. Brown. The motion is unopposed since Polymer did not file a response within five business days of the filing of the motion. *See* Court of Workers' Comp. Claims Prac. & Proc. 4.01 (2016).

6. This matter is set for a Status Hearing on October 3, 2016, at 2:00 p.m., Eastern Time.

7. **Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3) (2015). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance.**

8. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email WCCompliance.Program@tn.gov or by calling (615) 253-1471 or (615) 532-1309.

**ENTERED this the 10th day of August, 2016.**

_Audrey Headrick_
**Judge Audrey A. Headrick**
**Court of Workers' Compensation Claims**

Status Hearing:

A Status Hearing has been set with **Judge Audrey A. Headrick, Court of Workers' Compensation Claims. You must call 423-634-0164 or toll free at 855-383-0001 to participate in the Initial Hearing.**

8

**Please Note:** <u>You must call in on the scheduled date/time to participate.</u> **Failure to call in may result in a determination of the issues without your further participation.  All conferences are set using Eastern Time (ET).**

<u>Right to Appeal</u>:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board.  To file a Notice of Appeal, you must:

1.  Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2.  File the completed form with the Court Clerk *within seven business days* of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3.  Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4.  The appealing party is responsible for payment of a **filing fee in the amount of $75.00.**  Within ten calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment.  Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or other delivery service.  In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee.  The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten calendar days thereafter.  The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable.  **Failure to timely pay the filing fee or file the Affidavit of Indigency in accordance with this section shall result in dismissal of the appeal.**

5.  The parties, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten calendar days of the filing of the Expedited Hearing Notice of Appeal.  Alternatively, the parties may file a joint statement of the evidence within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. The statement of the evidence must convey a complete and accurate account of what transpired in the Court of Workers' Compensation Claims and must be approved by the workers' compensation judge before the record is submitted to the Clerk of the Appeals Board.

6. If the appellant elects to file a position statement in support of the interlocutory appeal, the appellant shall file such position statement with the Court Clerk within five business days of the expiration of the time to file a transcript or statement of the evidence, specifying the issues presented for review and including any argument in support thereof. A party opposing the appeal shall file a response, if any, with the Court Clerk within five business days of the filing of the appellant's position statement. All position statements pertaining to an appeal of an interlocutory order should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

## APPENDIX

Exhibits from July 13, 2016 Hearing:
1. Affidavit of Mr. Dennis
2. Medical records of Dr. John Gracy
3. Panels
4. Photographs of Polymer
5. Certificate to Return to Work dated April 21, 2016
6. Photograph of Mr. Dennis' workstation
7. March 16, 2016 office note of Dr. Matthew S. Bernard

Exhibits from November 20, 2015 Hearing:
1. Affidavit of Mr. Dennis
2. Medical records of Starr Regional
3. Medical records of Doctors Express
4. First Report
5. Documents received by Mr. Dennis from Accident Fund
6. Billing records from Starr Regional

Technical record:[6]
1. Expedited Hearing Order Granting Medical Benefits, entered December 18, 2015
2. Docketing Notice of Interlocutory Appeal, filed January 21, 2016
3. Notice of Appearance, filed February 19, 2016
4. Three Orders Resetting Case for Status Hearing, entered on March 2, 2016, March 24, 2016, and May 5, 2016
5. Dispute Certification Notice, filed March 22, 2016
6. Request for Expedited Hearing, filed May 11, 2016
7. Notice of Expedited Hearing, issued May 31, 2016
8. Agreed Order to Continue, entered July 5, 2016

---

[6] The Court did not consider attachments to Technical Record filings unless admitted into evidence during the Expedited Hearing. The Court considered factual statements in these filings or any attachments to them as allegations unless established by the evidence.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order Granting Temporary Disability Benefits was sent to the following recipients by the following methods of service on this the 10th day of August, 2016.

| Name | Certified Mail | First Class Mail | Via Fax | Fax Number | Via Email | Email Address |
|------|----------------|------------------|---------|------------|-----------|---------------|
| William J. Brown, Esq. | | | | | X | wjb@vollaw.com |
| Gordon Aulgur, Esq. | | | | | X | gordon.aulgur@accidentfund.com |

Penny Shrum, Clerk of Court
Court of Workers' Compensation Claims
WC.CourtClerk@tn.gov